UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brian Leon Roberts,

    Plaintiff,

    v.                                                                              Civil No. 2:16-cv-135

Vermont Department of Corrections,
Mindy Connor, Mark Potanas, Michelle
Beattie, Mitchell Miller, Linda Roberts,
Centurion of Vermont, LLC, and
Jeremy Cornwall,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 34)

Plaintiff Brian Leon Roberts, an inmate in the custody of the Vermont Department of Corrections (DOC), proceeding *pro se*, has filed an action pursuant to 42 U.S.C. § 1983 against the DOC and others alleging denial of proper medical care, generally asserting that Defendants engaged in "deliberate indifference, medical neglect, [and] medical malpractice." (Doc. 5 at 7.) Although it is not clear from the Complaint, Roberts's treating physician, Dr. Mitchell Miller, reports that Roberts suffers from deep vein thrombosis (DVT), a condition that arises from blood clots occurring in a person's deep veins. (Doc. 48-1.) Dr. Miller is also one of the defendants listed in Roberts's Complaint. (Doc. 5 at 2.) For relief, Roberts seeks $25 million and immediate release from custody. (Doc. 5 at 7.)

Presently before the court is Roberts's motion seeking additional medical treatment for his condition. More precisely, Roberts seeks an order compelling the defendants to transport him to the Dartmouth Hitchcock Medical Center (DHMC) and to arrange a consultation with an infectious disease specialist. (Doc. 34). His Motion is therefore properly construed as a Motion for a Preliminary Injunction under Fed. R. Civ. P. 65(a). Defendants have filed an opposition to the Motion, including an affidavit from Dr. Miller. (*See* Docs. 48, 48-1.) For the reasons set forth below, I recommend that the Motion be DENIED.

## **Background**

Roberts's Complaint is not the picture of clarity. In addition, unlike the standard on a motion to dismiss, when considering a motion for a preliminary injunction, "the [c]ourt need not accept as true the well-pleaded allegations in [the p]laintiffs' complaint." *Rheaume v. Pallito*, Civil Action No. 2:15–cv–135–wks–jmc, 2015 WL 7300790 at *2 (D. Vt. Oct. 22, 2015) (alterations in original) (quoting *Victorio v. Sammy's Fishbox Realty Co.*, No. 14 Civ. 8678(CM), 2014 WL 7180220, at *4 (S.D.N.Y. Dec. 12, 2014). Here, the affidavit of treating physician Miller reveals the following.

Roberts came into the custody of the DOC with a history of DVT and a pulmonary embolism. (Doc. 48-1 at 1, ¶ 3.) DVT occurs when a blood clot forms in one or more of a person's deep veins. (*Id.* at ¶ 4.) Dr. Miller has been treating Roberts for this condition, which causes occasional leg pain and swelling in his lower right leg. The most common treatment for DVT is wearing compression stockings to reduce swelling associated with DVT and to promote better circulation. Compression stockings are to be worn routinely,

2

and not only when DVT symptoms are active. (*Id*. at ¶ 7.) Roberts was issued compression stockings in May 2015 and has received education concerning the importance of continued use of the compression stockings, as well as the importance of elevating one's feet to reduce the likelihood of swelling. (*Id*. at ¶¶ 8–10.) According to Dr. Miller, Roberts has been re-educated about the importance of wearing the compression stockings repeatedly. (*Id.* at ¶ 9.) Despite these efforts, Roberts has not been compliant with wearing his compression stockings. (*Id*. at ¶¶ 11–12.) The swelling of Roberts's leg makes his skin susceptible to cellulitis, a common bacterial skin infection. (*Id.* at ¶¶ 17–18.) The cellulitis is associated with Roberts's DVT because cellulitis is likely to occur when skin is swollen. (*Id*. at ¶ 19.) Dr. Miller has treated Roberts's cellulitis with Augmentin, an antibiotic medication. (*Id*. at ¶¶ 17–18.)

To treat the leg swelling Roberts has also been excused from work details, ordered to elevate his legs, and again asked to wear his compression stockings. At times, he has been placed in the infirmary to monitor his compliance with this treatment regimen. (*Id*. at ¶¶ 13–14.) On these occasions, after a few days of rest, with leg elevation and wearing compression stockings, the swelling subsides and Roberts feels better and requests to return to work. (*Id*. at ¶ 15.) This has been a recurrent process because of Roberts's noncompliance with treatment recommendations. (*Id.* at ¶ 16.)

Roberts has also received specialized care. He was seen at DHMC in February for an ultrasound of his legs, which indicated the DVT condition. (*Id.* at ¶ 20.) Roberts was seen by a vascular specialist during an appointment on May 10, 2016 at which time the diagnosis of chronic, nonocclusive DVT of the femoral vein of the lower right leg was

3

confirmed.  (*Id.* at ¶¶ 21–22.)  The specialist prescribed higher-level compression stockings.  (*Id.* at ¶ 22.)

On September 13, 2016 Roberts experienced another bout of cellulitis and leg swelling.  (*Id.* at ¶ 24.)  He was transported to the Springfield (VT) Hospital Emergency Department.  (*Id.* at ¶¶ 25–27.)  Roberts was administered multiple intravenous doses of the antibiotic vancomycin over a 24-hour period.  (*Id.*)  An ultrasound revealed no blood clots were present in his lower right leg.  Hospital staff prescribed use of compression stockings, leg elevation, and a course of oral antibiotics.  (*Id*. at ¶ 28.)  Roberts was monitored in the prison infirmary until his return to general population on September 19, 2016.  (*Id.* at ¶ 29.)

Dr. Miller opines that had Roberts been compliant with his treatment regimen this most recent episode would have been less likely to have occurred.  (*Id.* at ¶ 30.)  Additionally, Dr. Miller anticipates that if Roberts continues to fail to adhere to the treatment recommendations, Roberts will continue to experience periodic episodes of swelling and pain.  Finally, Dr. Miller states that a referral to an infectious disease specialist is not warranted because Roberts's issues are related to his vascular system.

## Analysis

### I. Standards Governing Preliminary Injunctions

As noted above, Roberts has moved for an order compelling Defendants to provide additional medical treatment at DHMC, as well as a referral to an infectious disease specialist.  The court treats this as a Motion for a Preliminary Injunction seeking interim relief under Fed. R. Civ. P. 65 (a).  Preliminary injunctive relief such as that

4

sought here "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis and internal quotation marks omitted).

Roberts bear the burden to show that the requested relief is warranted. In this regard the Second Circuit has explained:

> A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. When the movant seeks a "mandatory" injunction—that is, as in this case, an injunction that will alter rather than maintain the status quo—[]he must meet the more rigorous standard of demonstrating a "clear" or "substantial" likelihood of success on the merits.

*Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted). Thus, to the extent Roberts seeks to be treated at DHMC or seeks to be treated by a particular specialist, he must meet the higher standard for mandatory injunctive relief.

## II.   Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir.1983)). Irreparable harm is an "'injury for which a monetary award cannot be adequate compensation.'" *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or

speculative." *Reuters*, 903 F.2d at 907 (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989)).  The movant is required to establish not a mere possibility of irreparable harm, but that it is "*likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990).  Any harm Roberts has sustained here is due to his own failure to comply with clear medical directives.  Fortunately, it appears that the harm is not irreparable.  It is abundantly clear that Roberts's condition is treatable and can be controlled if he abides by the treatment recommendations of medical personnel.

### III.    Likelihood of Success on the Merits

Roberts cannot establish a clear and substantial likelihood of success on the merits or a sufficiently serious question going to the merits of his claims to make it fair ground for litigation.  First, his claim against the DOC and any official-capacity claims against the individual defendants are barred by the Eleventh Amendment.  The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  The immunity extends to government entities such as "'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

Second, Roberts cannot show a clear and substantial likelihood of success on the merits of any Eighth Amendment claim.  A prisoner advancing an Eighth Amendment

6

claim for denial of medical or mental health care must allege and prove deliberate indifference to a serious medical or mental health need. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Roberts must show "more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The test is twofold. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). First, the prisoner must show that there was a sufficiently serious medical or mental health need. *Id.* Second, the prisoner must show that the prison officials demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *Id.* Prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (footnote omitted). Disagreement over proper treatment or diagnosis does not create a constitutional claim as long as the treatment was adequate. *Id.* at 105–06. It is clear from Dr. Miller's affidavit that Roberts cannot meet his burden at this stage to demonstrate a clear and substantial likelihood of success in his Eighth Amendment claim. The affidavit reveals that Roberts appears to be receiving appropriate care and there is no evidence to suggest otherwise. Very recently, he was transported to the emergency room for treatment needed because of his noncompliance with treatment directives. Roberts does not have a constitutional right to the treatment of his choice as long as the treatment being afforded to him is adequate. His disagreement with his treatment regimen is simply insufficient to carry his burden.

Next, Roberts's reference in his first cause of action (Doc. 5 at 6) to a violation of "HIPPA" (which is presumed to be a reference to the Health Insurance Portability and

Accountability Act of 1996, 42 U.S.C. § 1320d) is meritless.  HIPPA does not provide a private right of action.  *Hills v. Liberty Mut. Ins.*, No. 14–CV–0328S, 2015 WL 1243337 (W.D.N.Y. Mar. 18, 2015).  In addition, Roberts's medical-malpractice claim under Vermont state law fails in light of Roberts's failure to comply with the certificate-of-merit requirement found at 12 V.S.A. § 1042(a).

Finally, it must be noted that Roberts seeks release from custody to pursue medical treatment as a remedy for the alleged constitutional violation.  Release from custody is not a remedy that is available in a § 1983 action.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) ("If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option.").

## Conclusion

Roberts fails to show either irreparable harm or a clear and substantial likelihood of success on the merits of his claims.  Accordingly, he fails to satisfy the exacting tests required for the issuance of a preliminary injunction.  I therefore recommend that his Motion for a Preliminary Injunction (Doc. 34) be DENIED.

Dated at Burlington, in the District of Vermont, this 14th day of October, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).