UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brian Leon Roberts,

    Plaintiff,

        v.                                Civil Action No. 2:16–cv–135–cr–jmc

Vermont Department of Corrections,
Mindy Connor, Mark Potanas,
Michelle Beattie, Mitchell Miller,
Linda Roberts, Centurion of Vermont, LLC,
and Jeremy Cornwall,

    Defendants.

## **REPORT AND RECOMMENDATION**
(Doc. 54)

Plaintiff Brian Roberts, an inmate in the custody of the Vermont Department of Corrections (DOC), has filed this action *pro se* pursuant to 42 U.S.C. § 1983 against Defendants the DOC, Centurion of Vermont, LLC, and various individuals and health care providers who are DOC and Southern State Corrections employees. (Doc. 5 at 1–3.) Roberts alleges that he was denied proper medical care while incarcerated and that Defendants engaged in "deliberate indifference, medical neglect, [and] medical malpractice." (*Id.* at 7.) For relief, Roberts seeks $25 million in damages, release from custody, withdrawal of the criminal charges against him, and placement in a hospital "to recover." (*Id.* at 6.)

Roberts filed his Complaint on May 31, 2016.[1]  (Doc. 5.)  Presently before the court is Defendants' Motion for Summary Judgment.  (Doc. 54.)  Therein, Defendants make the following arguments: 1) Roberts's claim under the Health Insurance Portability and Accountability Act (HIPAA) fails because the statute does not provide a private right of action; 2) Roberts has not demonstrated that he is entitled to relief for deliberate indifference because Defendants have provided him with proper medical care; 3) Roberts has failed to show that he is entitled to relief for his medical malpractice claim; and 4) this court cannot grant the equitable relief that Roberts seeks—namely his release from custody.  (*Id.* at 3–9.)  As required by Local Rule 56, Defendants submitted a Statement of Undisputed Material Facts with their Motion.  (Doc. 54-3.)  Defendants also informed Roberts of the consequences of failing to respond (Doc. 56), in compliance with the Local Rules and this court's December 2, 2016 Order (Doc. 55).  Nonetheless, Roberts did not respond to the Motion and has not filed an affidavit or a statement of disputed material facts as required by Local Rule 56(b).

For the reasons set forth below, I recommend that Defendants' unopposed Motion for Summary Judgment (Doc. 54) be GRANTED and Roberts's Complaint (Doc. 5) be DISMISSED.

**Background**

The material facts, drawn from Roberts's Complaint (Doc. 5), Defendants' Statement of Undisputed Material Facts (Doc. 54-3), and the Affidavit of Defendant

---

[1] Roberts filed a Motion to Amend his complaint on August 26, 2016 (Doc. 36), which the court granted (Doc. 45), but Roberts never filed an amended complaint (*see* Doc. 52).

Dr. Mitchell Miller (Doc. 54-5), Roberts's treating physician, are summarized as follows.

In his Complaint, which is not particularly clear, Roberts alleges that he spoke with various DOC officials about an unspecified medical condition in his right leg that was getting worse. (Doc. 5 at 5, 7.) He claims that beginning in December 2015, he was forced to leave work in the facility kitchen "due to the pain and suffering of working 12 hours a day," and that correctional staff members did not take his complaints seriously. (*Id.* at 5.) Roberts was seen by a nurse, who told him to keep his leg elevated and provided him with two additional pillows. (*Id.* at 8.) Roberts continued to experience pain in his leg and was sick three times with diarrhea and vomiting, which he attributed to an infection in his leg. (*Id.* at 8–9; Doc. 54-3 at 2, ¶ 6.)

Although not specified in the Complaint, Dr. Miller explains that when Roberts came into the custody of the DOC, he had a history of deep vein thrombosis (DVT), a condition resulting when blood clots form in the deep veins, and a pulmonary embolism. (Doc. 54-5 at 2, ¶¶ 3–4.) According to Dr. Miller, Roberts's DVT causes him occasional pain and swelling in the lower right leg. (*Id.* ¶¶ 4–5.) One of the most common treatments for DVT is wearing compression stockings to reduce swelling and promote better circulation. (*Id.* ¶ 6.) Dr. Miller explains that "[c]ompression stockings should be worn routinely and not just when DVT symptoms are active." (*Id.* at 3, ¶ 7.) Roberts was issued compression stockings in May 2015 and was instructed on the importance of consistent use "to reduce the likelihood of swelling." (*Id.* ¶¶ 8–10.) According to Dr. Miller, "Roberts has been re-educated about the importance of wearing the compression stockings repeatedly." (*Id.* ¶ 9.) The Complaint corroborates this fact,

stating that correctional staff members kept telling Roberts to "put [his] sock back on." (Doc. 5 at 5.) Roberts, however, failed to wear the stockings as instructed and experienced "periodic swelling in his lower right leg." (Doc. 54-5 at 3, ¶ 12.)

To treat the swelling, Roberts was excused from his work shifts and ordered to stay off his feet, elevate his legs, and wear his compression stockings. (Doc. 54-3 at 3, ¶ 22; *see also* Doc. 5 at 5.) On these occasions, the swelling subsided after a few days and Roberts reported feeling better and requested to return to work. (Doc. 54-3 at 3, ¶ 24.) According to Dr. Miller, this cycle has inevitably repeated because of Roberts's noncompliance with the medical order to "routinely wear his compression stockings." (Doc. 54-5 at 3, ¶ 16.) Dr. Miller explains that the swelling associated with DVT has made Roberts's skin more susceptible to cellulitis, a common bacterial skin infection. (*Id.* ¶¶ 17–18.) This appears to be the infection that Roberts describes in his Complaint. (Doc. 5 at 7; *see also* Doc 54-3 at 3, ¶ 26.)

Roberts alleges that he has been denied proper medical care by Dr. Miller and that he has been harassed by medical personnel about the numerous sick call slips he has filed. (Doc. 5 at 7–8.) He further claims that he was diagnosed without undergoing testing regarding his condition, that prison staff members have done "nothing to fix [his] problems," and that medical providers have shown "[d]eliberate [i]ndifference" to his condition. (*Id.* at 9.)

By contrast, Defendants describe their extensive treatment of Roberts's DVT. They state that Roberts was seen at Dartmouth Hitchcock Medical Center (DHMC) in February 2016 for an ultrasound of his legs, which indicated that Roberts had DVT.

(Doc. 54-3 at 3, ¶ 29.)  A vascular specialist examined Roberts a few months later, confirming the DVT diagnosis and prescribing higher-level compression stockings.  (*Id.* ¶¶ 30–31.)  On September 13, 2016, Roberts experienced another bout of cellulitis and leg swelling.  (*Id.* ¶ 33.)  He was transported to the Springfield Hospital Emergency Department (SHED), where he was treated with multiple intravenous doses of antibiotics over a 24-hour period.  (*Id.* at 4, ¶¶ 34, 36.)  An ultrasound revealed that no blood clots were present in his lower right leg.  (*Id.* ¶ 35.)  Hospital staff prescribed use of compression stockings, leg elevation, and a course of oral antibiotics.  (*Id.* ¶ 37.)  Roberts was monitored in the prison infirmary until his return to general population on September 19, 2016.  (*Id.* ¶ 38.)

Dr. Miller opines that had Roberts complied with his treatment regimen, the September 2016 hospitalization would have been less likely.  (Doc. 54-5 at 4, ¶ 30.)  Dr. Miller anticipates that if Roberts persists in ignoring prescribed treatments, he will continue to experience periodic episodes of swelling and pain.  (*Id.*)

## Discussion

### I.  Summary Judgment Standard

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court is "'required to resolve all ambiguities and draw all factual inferences in favor of the' nonmovant."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999)).  If the moving

party demonstrates that there are no genuine issues of material fact, the burden then shifts to the nonmoving party, who must present "'significantly probative supporting evidence' of a disputed fact." *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  He "cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible." *Hamlett*, 496 F. Supp. 2d at 328 (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *see also Dasher v. N.Y.C. Police Dep't*, No. 94 CV 3847(SJ), 1999 WL 184118, at *1 (E.D.N.Y. Mar. 18, 1999) ("[T]he court should grant summary judgment where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative.").

Because Roberts is proceeding *pro se*, the court "must interpret his papers liberally 'to raise the strongest arguments that they suggest.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  *Pro se* litigants must nevertheless meet the "usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303 (W.D.N.Y. 2006) (quoting *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 226 (W.D.N.Y. 2003)); *see also Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.

2003) ("[M]ere conclusory allegations, speculation[,] or conjecture will not avail a party resisting summary judgment." (first alteration in original) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996))).

## II. HIPAA Claims

Roberts seeks relief under "HIPAA," which the court presumes is a reference to the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d. (Doc. 5 at 11; *see also* Doc. 51 at 7–8.) Roberts alleges that Defendant "Supervisor Cornwall violated [his] 'HIPAA' [r]ights and . . . is not a medical doctor" (Doc. 5 at 7), and that Defendant Michelle Beattie, the "Nurse Chief Manager of Centurion of Vermont LLC at Southern State Correctional," violated his HIPAA rights by "let[ting his skin condition] go on" (*id.* at 9). Defendants argue that these claims fail because there is no private right of action under HIPAA. (Doc. 54 at 5.)

To seek relief under a statute, a litigant must have a statutory cause of action. "Without a showing of congressional intent, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)). HIPAA authorizes the Secretary of Health and Human Services to promulgate regulations on health care data privacy, among other responsibilities. *See, e.g.*, 42 U.S.C. § 1320d-2(d); *see also O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *9 n.17 (N.D.N.Y. Feb. 10, 2010). HIPAA only specifies that the Secretary or "other authorized state authorities may bring a HIPAA enforcement action." *Warren Pearl Constr. Corp. v.*

7

*Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 376 (S.D.N.Y. 2009) (citing 42 U.S.C. § 300gg-22). Accordingly, "[c]ourt[s] have overwhelmingly concluded that there is no private right of action under HIPAA." *Coon v. Burkly*, No. 1:13–CV–1306, 2014 WL 1976669, at *8 (N.D.N.Y. May 15, 2014) (citing cases); *see also Thurston v. Pallito*, Civil Action No. 5:13–cv–316, 2015 WL 1097377, at *17 (D. Vt. Jan. 13, 2015); *Warren*, 639 F. Supp. 2d at 377 (citing cases). Furthermore, an alleged HIPAA violation cannot form the basis of a 42 U.S.C. § 1983 claim. *See, e.g.*, *Thurston*, 2015 WL 1097377, at *17; *O'Neil*, 2010 WL 502948, at *9 n.17 (citing cases). Defendants are therefore entitled to summary judgment as a matter of law with respect to Roberts's HIPAA claim.

### III.     42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). A plaintiff asserting a § 1983 claim must demonstrate that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Section 1983 does not itself create or establish a federally protected right. Instead it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Roberts's

federal constitutional claim is properly construed as one brought for proper medical care under the Eighth Amendment to the Constitution.

### A. Sovereign Immunity

As a threshold matter, Roberts's § 1983 claims, to the extent they are asserted against the DOC and DOC employees in their official capacities for money damages, are barred as a matter of law by sovereign immunity. Roberts does not state whether he has sued Defendants in their official or individual capacities, but "where a *pro se* litigant does not specify in what capacity the individual defendants are being sued, courts generally 'liberally construe the complaint as alleging both official and individual capacity claims.'" *Anderson v. Pedalty*, No. 14–CV–00192, 2015 WL 1735192, at *3 (W.D.N.Y. Apr. 16, 2015) (quoting *McCloud v. Kane*, 491 F. Supp. 2d 312, 316 (E.D.N.Y. 2007)).

Defendants notably fail to raise the sovereign immunity doctrine.[2] (*See* Doc. 54.) The Supreme Court has held that "lower courts may raise the issue of Eleventh Amendment immunity sua sponte," although "they are not required to do so." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006) (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982)). The court should elect to do so here. *See, e.g.*, *Murphy v. Vt. Dep't of Corr.*, Civil Action No. 2:14–cv–126, 2016 WL 890031, at *8 (D. Vt. Feb. 25, 2016) (dismissing inmate's § 1983 claim against the DOC sua sponte as

---

[2] Inexplicably, Defendants also fail to address whether the DOC, or any of the Defendants sued in their official capacities for monetary damages, are "persons" subject to suit under § 1983. "Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)). Because the DOC is a Vermont state agency, any claims against it, or official capacity claims against its employees, fail under § 1983.

9

barred by sovereign immunity), *report and recommendation adopted*, 2016 WL 907769 (D. Vt. Mar. 8, 2016); *Muhammad v. Gold*, No. 1:05-CV-146, 2007 WL 3088133, at *2 n.3 (D. Vt. Oct. 23, 2007) (dismissing inmate's § 1983 claims against the DOC sua sponte as "clearly barred by the Eleventh Amendment").

The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). Sovereign immunity extends to "state officials sued for damages in their official capacity." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). A lawsuit brought against a state official in his official capacity thus constitutes litigation against the State itself for immunity purposes. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

There are two exceptions to the sovereign immunity doctrine: a state can waive its immunity to suit, or Congress can abrogate a state's immunity by statute. *Id.* at 66. Neither exception applies here. "Vermont has not waived its sovereign immunity under § 1983." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) (citing Vt. Stat. Ann. tit. 12, § 5601(g)). And Congress has not abrogated Vermont's immunity by statute. *See Muhammad*, 2007 WL 3088133, at *2 ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983." (citing *Will*, 491 U.S. at 67)).

Roberts's claims against the DOC, a Vermont state agency, are thus barred by the Eleventh Amendment. To the extent that Roberts brings claims for monetary relief against DOC employees Mindy Connor, Mark Potanas, Michelle Beattie, Linda Roberts, and Jeremy Cornwall in their official capacities, these claims also are barred because they constitute claims against the State of Vermont.[3] *See Minotti*, 798 F.2d at 609. Accordingly, I recommend that these claims be DISMISSED.

I nevertheless proceed with a substantive analysis of Roberts's Eighth Amendment claims to the extent they are brought against Defendants in their individual capacities or against any non-DOC employees.

B.    **Eighth Amendment Claims**

The Eighth Amendment guarantees inmates access to adequate medical care, *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and prohibits "deliberate indifference to serious medical needs of prisoners" by prison officials, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A prisoner claiming a violation of his Eighth Amendment rights must allege both objective and subjective deliberate indifference. *Id.* "The objective component requires that 'the alleged deprivation . . . be sufficiently serious, in

---

[3] Though Defendants do not address the issue, Centurion of Vermont, LLC and Dr. Miller, if he is a Centurion or DOC employee, also may be state actors entitled to sovereign immunity. According to Defendants, Centurion is a managed care company that contracts with the DOC to provide medical care to inmates. (Doc. 54-3 at 2, ¶ 11.) In *West v. Akins*, the Supreme Court held that a private doctor's treatment of inmates pursuant to a contract with the state was "state action fairly attributable to the state," "because [t]he State bore an affirmative obligation to provide adequate medical care to [the inmate]; the State delegated that function to [the physician]; and [the physician] voluntarily assumed that obligation by contract." 487 U.S. 42, 56, 57; *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided." (citing *West*, 487 U.S. at 54)).

11

the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Under the subjective prong, "the charged officials must be subjectively reckless in their denial of medical care," meaning they acted or failed to act "while *actually aware* of a substantial risk that serious inmate harm will result." *Spavone*, 719 F.3d at 138 (second quoting *Salahuddin*, 467 F.3d at 280). In other words, the prison official must have "know[n] of and disregard[ed] an excessive risk to inmate health or safety." *Hathaway*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Bain v. Hsu*, No. 1:06–CV–189, 2010 WL 3927589, at *3 (D. Vt. Sept. 29, 2010) (same); *Nails v. Laplante*, 596 F. Supp. 2d 475, 480 (D. Conn. 2009) ("Inmates do not have a constitutional right to the treatment of their choice."). Moreover, a plaintiff's refusal to comply with the treatment prescribed by medical staff undermines his deliberate indifference claim. *Wright v. Genovese*, 694 F. Supp. 2d 137, 157 (N.D.N.Y. 2010) (citing *Jones v. Smith*, 784 F.2d 149, 151–52 (2d Cir. 1986)), *aff'd*, 415 F. App'x 313 (2d Cir. 2011).

There is no genuine dispute of material fact with respect to Roberts's Eighth Amendment claims. The facts reveal that Roberts cannot satisfy either deliberate

indifference prong. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). First, under the objective requirement, there is no genuine dispute that Roberts was not in fact deprived of necessary medical care. Defendants point to numerous examples of appropriate medical treatment for Roberts's DVT, including providing him compression stockings, and educating him on the importance of wearing them and elevating his legs to limit swelling. (Doc. 54 at 7–8 (citing Doc. 54-3 at 2–3, ¶¶ 17, 18, 22).) Roberts was brought to DHMC, where an ultrasound of his legs was conducted and he was seen by a vascular specialist. (*Id.* at 8 (citing Doc. 54-3 at 3, ¶¶ 29–31).) Subsequently, Defendants transported Roberts to SHED for continued professional medical treatment for the DVT. (Doc. 54-3 at 4, ¶¶ 34–37.)

Further, there is no genuine dispute that Roberts did not suffer a "sufficiently serious" deprivation of medical care. Though Roberts claims that he "asked for help," but "no one" took him seriously (Doc. 5 at 5), and that various Defendants did "nothing to fix the problem" (*id.* at 10), these allegations cannot withstand summary judgment as these assertions are unsupported by any evidence. *See Hamlett*, 496 F. Supp. 2d at 328; *Dasher*, 1999 WL 184118, at *1. Roberts cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d

13

Cir. 2010) (alteration in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Moreover, many of the factual allegations in Roberts's Complaint lend support to Defendants' evidence that they provided adequate medical care. Roberts admits that he was provided with compression stockings (Doc. 5 at 6), was seen by Dr. Miller and other medical personnel (*id.* at 7–8, 9), and was provided with additional pillows to elevate his leg (*id.* at 8).

Second, there is no genuine dispute of material fact under the subjective prong. The undisputed evidence reveals that Defendants did not disregard Roberts's DVT condition. Roberts was regularly seen by Dr. Miller in the facility and also treated by providers outside of the facility for his condition. (Doc. 54 at 8 (citing Doc. 54-3 at 4, ¶¶ 34–37).) In addition to bringing Roberts to DHMC for treatment by a vascular specialist, Defendants transported Roberts to SHED after he "experienced another episode of swelling and cellulitis." (*Id.* (citing Doc. 54-3 at 4, ¶ 34).) At SHED, Roberts underwent an ultrasound of his leg, was treated with intravenous antibiotics, and was provided with discharge instructions of leg elevation and use of compression stockings. (*Id.* (citing Doc. 54-3 at 4, ¶¶ 35–37).)

To the extent that Roberts disagrees with the treatment provided by Defendants—asserting in a conclusory manner that Defendants did nothing to help him (Doc. 5 at 9), that he was merely told to wear his "sock" (*id.* at 5), and that he was provided a diagnosis without a skin sample or a test (*id.* at 9)—his disagreement does not give rise to an Eighth Amendment violation. *See Chance*, 143 F.3d at 703. Roberts's claims are also

undermined by his ongoing refusal to comply with medical orders to wear compression stockings. (Doc. 54-5 at 3, ¶¶ 7, 11–12, 16; Doc. 5 at 5); *see Jones*, 784 F.2d at 151–52; *Wright*, 694 F. Supp. 2d at157.

Accordingly, there is no genuine dispute of material fact with respect to Roberts's Eighth Amendment claim, and I recommend that Defendants' Motion be GRANTED and Roberts's Eighth Amendment claim be DISMISSED.

## IV. Medical Malpractice Claim

Defendants argue that Roberts has failed to present evidence supporting a medical malpractice claim because he has not filed a certificate of merit or presented medical expert testimony regarding his treatment. (Doc. 54 at 3–5 (citing Vt. Stat. ann. tit. 12, §§ 1042(a), 1908(1)).) I recommend that the court refrain from exercising supplemental jurisdiction over this state law claim. *See* 28 U.S.C. § 1367(c)(3).

In any civil action in which original federal jurisdiction is established, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over state law claims, however, if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). As the Second Circuit explained, "if [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." *Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the

usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

I recommend that the court refrain from exercising supplemental jurisdiction over Roberts's medical malpractice claim because, as discussed above, there is no genuine dispute of material fact as to the underlying federal claims. Even if the court were to exercise jurisdiction over his medical malpractice claim, it fails because Roberts has not complied with the requirements of Vt. Stat. Ann. tit. 12, § 1042. Under this statute, a plaintiff asserting a medical malpractice claim must file, "simultaneously" with his complaint, a "certificate of merit" certifying that he has consulted with a health care provider qualified to serve as an expert witness who has:

> (1) described the applicable standard of care;
>
> (2) indicated that based on reasonably available evidence, there is a reasonable likelihood that the plaintiff will be able to show that the defendant failed to meet that standard of care; and
>
> (3) indicated that there is a reasonable likelihood that the plaintiff will be able to show that the defendant's failure to meet the standard of care caused the plaintiff's injury.

*Id.* § 1042(a); *see also McClellan v. Haddock*, 2017 VT 13, ¶ 3; *Patient A v. Vt. Agency of Human Servs.*, No. 5:14–cv–000206, 2015 WL 6449301, at *3 (D. Vt. Oct. 23, 2015). "The statute provides further that 'failure to file the certificate of merit . . . shall be grounds for dismissal of the action without prejudice, except in the rare instances in which a court determines that expert testimony is not required to establish a case for medical malpractice.'" *McClellan*, 2017 VT 13, ¶ 3 (quoting Vt. Stat. Ann. tit. 12,

16

§ 1042(e)). There is no indication that Roberts has consulted with a qualified provider or filed the requisite certificate, and the Complaint does not state the applicable standard of care or allege how Defendants breached it. Accordingly, if the court were to exercise jurisdiction over Roberts's medical malpractice claim, it should be dismissed.[4]

## V. Demand for Release from Custody

Finally, analyzing Roberts's demand for release under the Prison Litigation Reform Act (PLRA), Defendants argue that Roberts cannot be released from custody because this relief is not narrowly tailored to addressing Roberts's medical condition. (Doc. 54 at 8–9 (citing 18 U.S.C. § 3626(a)).)

The court need not analyze the PLRA issue because release from custody is simply not available as relief in a § 1983 cause of action. The Supreme Court has held that the "sole federal remedy" for a state prisoner seeking release is a writ of habeas corpus under 28 U.S.C. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) ("If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment, or to award him damages; release from custody is not an option." (citing cases)). A prisoner seeking to be released is "in essence applying

---

[4] Although not raised by Defendants, if Roberts's medical malpractice claim was considered, it also would likely be barred under the Vermont Tort Claims Act (VTCA). Claims resulting from alleged torts by state employees may be brought solely against the State of Vermont and "exclusively in Vermont superior courts." *Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *10 (D. Vt. May 18, 2015) (quoting *Rheaume v. Tallon*, No. 1:07–cv–262, 2009 WL 385422, at *2 (D. Vt. Feb. 12, 2009)) (citing Vt. Stat. Ann. tit. 12, §§ 5601(a), 5602(a)). A tort action may be brought against a state employee directly only if he or she acted with "gross negligence or willful misconduct." Vt. Stat. Ann. tit. 12, § 5602(b). To the extent that Roberts's medical malpractice claims are asserted against DOC employees, they appear to have been brought against the wrong defendants in the wrong court.

17

for a writ of habeas corpus," and does not state a claim under § 1983. *United States ex rel. Katzoff v. McGinnis*, 441 F.2d 558, 559 (2d Cir. 1971); *see also Lichtenthal v. Cortese*, No. 3:07cv957 (SRU), 2007 WL 2049544, at *2 (D. Conn. July 13, 2007) (finding that "to the extent [the plaintiff] seeks immediate release . . . that relief is not available under section 1983" and "must be brought by way of a petition for writ of habeas corpus").

Roberts's demand for release is improperly asserted in this § 1983 action and can only be sought in a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Accordingly, I recommend that Roberts's Complaint be DISMISSED to the extent he demands release from custody.

## VI. Leave to Amend

In general, district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once, "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied"). Amendment is futile when the cause of action is substantively flawed and better pleading will not cure

the complaint's defects. *Cuoco*, 222 F.3d at 112; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

Amendment would be futile here because there is no private right of action under HIPAA, Roberts's claims against the DOC and official capacity claims against DOC officials are barred by sovereign immunity, and the Eighth Amendment claims against all Defendants, whether in their official or individual capacities, fail in substance for the reasons explained above. Significantly, the court has already granted Roberts leave to amend his Complaint (Doc. 45), but Roberts failed to do so. I therefore recommend that the court decline to grant Roberts additional leave to amend.

## **Conclusion**

For these reasons, I recommend that the court GRANT Defendants' Motion for Summary Judgment (Doc. 54) and DISMISS Roberts's Complaint (Doc. 5) with prejudice. Specifically, I recommend that the court conclude as follows:

1. There is no private right of action under HIPAA, and a HIPAA claim cannot form the basis of a 42 U.S.C. § 1983 cause of action. *See supra* pp. 7–8.

2. Although not raised by Defendants, Roberts's claims are barred by the doctrine of sovereign immunity, to the extent that Roberts has asserted claims against the DOC and DOC employees in their official capacities for monetary relief. *See supra* pp. 8–11.

3. There is no genuine dispute of material fact with respect to Roberts's Eighth Amendment claim because Defendants consistently provided constitutionally appropriate medical care to Roberts. *See supra* pp. 11–15.

19

4. I recommend that the court refrain from exercising supplemental jurisdiction over Roberts's medical malpractice claim under 28 U.S.C. § 1367 because Roberts's underlying federal law claims should be dismissed. *See supra* pp. 15–17.

5. Roberts's demand that he be released from custody is improperly asserted under § 1983, and must be brought under 28 U.S.C. § 2254. *See supra* pp. 17–18.

Dated at Burlington, in the District of Vermont, this 4th day of April, 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).